IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


OCTAVIO ROMERO-HERNANDEZ, ET AL                                  PLAINTIFFS


V.                                                               CIVIL ACTION NO. 3:08CV93-M-A


RYAN ALEXANDER d/b/a RYAN ALEXANDER
FARMS AND ALEXANDER FARMS, LLC                                   DEFENDANTS


**<u>ORDER</u>**

Before the court are defendants' motion to compel [Docket 53] and plaintiffs' motion for protective order [Docket 54]. Although neither party filed a good faith certificate under Uniform Local Rule 37.1(A),[1] it is clear from correspondence between counsel and conversations between the court and counsel during the May 19, 2009 status conference that the parties engaged in good faith efforts to resolve their disputes without court involvement, and the court will address the motions on the merits. *Francois v. Colonial Freight Systems, Inc*. 2007 WL 679998 (S.D.Miss.

---

[1] Prior to service of a discovery motion, all counsel shall be under a duty to confer in good faith to determine to what extent the issue in question can be resolved without court intervention. A Good Faith Certificate [Official Form No. 5] *shall be filed with all discovery motions*, with a copy to the magistrate judge. . . . If a party fails to cooperate in the attempt to resolve a discovery dispute or prepare the Good Faith Certificate, the filed motion shall be accompanied by an affidavit by the moving party detailing the alleged lack of cooperation and requesting appropriate sanctions.

Uniform Local Rule 37.1(A) (emphasis added).

1

2007).  The court holds that both motions should be granted in part and denied in part.

Motion to Compel

The defendants propounded fifteen requests for admissions to plaintiffs on February 18, 2009.  On May 18, 2009, plaintiffs responded to the requests first by making six objections "applicable to all requests for admission," then responding to each specific request with an additional objection or objections and then admitting or denying the request with specific limitations or caveats or, as to requests number 6 and 4, responding "Because this request is wholly objectionable, no response is provided."

Rule 36 of the Federal Rules of Civil Procedure requires that a party upon whom requests for admissions have been served either admit the matter as requested or object to or deny the request.  If a party serves an objection or denial, it must fairly explain each such objection or denial:

> **(4) Answer.**  If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.
> **(5) Objections.**  The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial.

If a party simply does not know whether the matter it is asked to admit is true, it may reply that it can neither admit nor deny the matter, but such a response requires that the responding party also set forth in detail the reasons for the response.  "A general statement that it can neither admit nor

2

deny, unaccompanied by reasons, will be held an insufficient response." Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, 8A FEDERAL PRACTICE & PROCEDURE § 2261, at 556-57 (2d ed.1994). This court has, in another case, relied on the case of *Diederich v. Department of Army,* 132 F.R.D. 614, 619 (S.D.N.Y.1990) for definition of the term "reasonable inquiry" as it applies to requests for admissions:

> "reasonable inquiry" includes investigation and inquiry of any of defendant's officers, administrators, agents, employees, servants, enlisted or other personnel, who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response. In this connection, relevant documents and regulations must be reviewed as well.

*Haggie v. Coldwell Banker Real Estate Corp.* Civil Action No. 4:04cv111-M-A, May 15, 2007, 2 007 WL 1452495, *1 (N.D. Miss.), citing *Diederich,* 132 F.R.D. at 619. There is very little case law in the Fifth Circuit addressing the sufficiency of responses to requests for admissions. However, the undersigned has previously ruled that the a court must examine each case in light of its specific facts and circumstances to determine whether a responding party made a reasonable inquiry to determine whether the request should be admitted or denied or if there is insufficient information to permit a definitive response. *Haggie v. Coldwell Banker Real Estate Corp. , supra*, at *2.

In this case, the plaintiffs objected to: (1) responding within 30 days because the defendants agreed that plaintiffs could have 60 days to respond; (2) responding "separately and individually" to each request when plaintiffs' answers are the same; (3) answering the requests under oath instead of simply having their attorney sign the response; (4) the definition, lack of definition, or overbreadth of definition provided for "pertains," "subject incident," "identify," "substantial," "resident housing," "Alexander Farms," "residing," and "resided;" (5) the requests

3

as "overbroad because they are not limited by specific dates, places, or employers and because any employment that the plaintiffs may have performed in the United States in other years, locations, or for other employers not parties to this lawsuit is irrelevant to the present action;" and (6) request numbers 4 and 6 because the "request is wholly objectionable" and therefore "no response is provided." Docket 53. Some of these responses are tedious and hypertechnical at best. However, after examining the responses as a whole under Rule 36, the court is unable to hold that the plaintiffs' responses to Interrogatory Nos. 13, 14, and 15 are insufficient.

Defendants seek revised responses, or simply a clear response, to requests for admission numbers 8, 9, 13, 14 and 15.

> **Request for Admission No. Eight (8):** Admit that Alexander Farms paid or reimbursed you for your transportation costs from Monterrey, Mexico to Vardaman, Mississippi.
>
> **Request for Admission No. Nine (9)**: Admit that Alexander Farms paid or reimbursed you for your transportation costs from Vardaman, Mississippi to Monterrey, Mexico.

The answer to both request numbers 8 and 9 was the same:

> **Answer:** Plaintiffs object to this request because it is not limited by specific dates, places, or employers, and because any employment or travel that Plaintiffs may have performed in other years, locations, or for other employers not parties to this lawsuit is irrelevant to the present action. Plaintiffs also object because the term "Alexander Farms" is not defined.
> Subject to and without waiving the foregoing objections:
> Denied. Plaintiffs admit that Defendants' employment records indicate some payment in their final paychecks above their normal piece rate earnings.

As an initial matter, it is the plaintiffs who filed this action against defendants Ryan Alexander d/b/a Ryan Alexander Farms and Alexander Farms LLC. The objection founded upon pretended ignorance as to what defendants mean when they use "Alexander Farms" in a request

4

is, in the court's view, disingenuous and not in conformity with the spirit of cooperation required by the rules of discovery. The request clearly refers to allegations made by plaintiffs in paragraphs 15 - 22 of their complaint. Docket 1.

The plaintiffs argue that the defendants' motion to compel is made for the sole reason that defendants "simply do not agree with some of the responses" and have agreed to amend their responses should additional information come to light that would necessitate a different response.[2] Docket 56, p. 1. Plaintiffs acknowledged in response to the requests only that employment records indicate "some payment in their final paychecks above the normal piece rate earnings." They further explain in their response to the defendants' motion to compel that even though they were paid an amount in excess of the normal rate in their final paychecks, they were unable to admit that the additional payment was a "partial payment" because they did not know why they were paid the additional sum or what it was intended to represent. *Id* at 4. Of course, this is precisely the information which a party is required to put into its response to the *request for admission itself* rather than waiting to offer that explanation in response to a motion to compel. It should not have been necessary for defendants to have to file a motion to obtain this information; plaintiffs must amend their previous response to these requests to state in plain English the entirety of their reasons for not being able to admit or deny, including the information they have provided in their response to the motion to compel, as a complete response

---

[2] An agreement which is superfluous in any event as this burden is already imposed upon them by Fed. R. Civ. P. 26(e)(1)'s requirement to supplement or correct any response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. . . ."

to these requests.

> **Request For Admission No. 13:** Admit that Alexander Farms paid you wages in an amount equal to or more than the then applicable minimum wage for the hours you spent working.
>
> **Answer:** Plaintiffs object to this request as overbroad because it is not limited by specific dates or to employment with Defendants. Plaintiffs object because the term "Alexander Farms" is not defined. Subject to and without waiving the foregoing objections,
> Denied with regard to employment with Defendants in 2006.

Defendants' motion states that they want to be sure that the plaintiffs are absolutely denying this request and that the denial is not qualified for any reason. Docket 53, p. 5. Responding to the motion, plaintiffs "unequivocally deny Defendant's Request for Admission No. 13. . . ." Docket 56, p. 4. Although it would have been simpler and would have avoided court involvement in the matter for plaintiffs to have said so in the response itself instead of waiting until defendants filed their motion, the court holds that with this further clarification plaintiff's response is clear – denied. Thus the court need not analyze further the sufficiency of this response.

> **Request for Admission No. 14**: Admit that when you contracted with Alexander Farms, you expected to be reimbursed for the transportation costs that you incurred in traveling to the United States at a point in time when you had completed 50% of your work contract.
>
> **Answer**: Plaintiffs object to this request as overbroad because it is not limited by specific dates. Plaintiffs object because the term "Alexander Farms" is not defined. Plaintiffs also object because Plaintiffs' expectations are irrelevant to their claims and to Defendants' liability in this lawsuit.
> Subject to and without waiving the foregoing objections: Denied as stated. Plaintiffs admit that one of the terms of Plaintiffs' contract with Defendants was that Defendants prepay or reimburse Plaintiffs at the 50% point of their contracts for transportation and daily subsistence from the place from which they came to work for Defendants to Defendants' farm.

As in the responses to No. 13 above, the plaintiffs expended much energy objecting, then

6

denied the request. Plaintiffs then invoked the contract term relating to this request. Plaintiffs' response is not particularly articulate, but it is sufficient under the rule.

> **Request For Admission No. 15**: Admit that Alexander Farms reimbursed you for your transportation costs that you incurred in traveling to the United States at a point in time when you completed 50% of your work contract.
>
> **Answer**: Plaintiffs object to this request as overbroad because it is not limited by specific dates. Plaintiffs object because the term "Alexander Farms" is not defined. Subject to and without waiving the foregoing objections: Denied with regard to employment with Defendants in 2006.

As with Request No. 13 above, defendants ask that the court clarify that the plaintiffs have denied this request and that they do not admit any portion of the request or have not otherwise qualified the denial. In response to the motion, the plaintiffs state:

> Plaintiffs denied each of defendants Requests for admission Nos. 8, 9, and 15 for the same reason. *Plaintiffs unequivocally deny each request.*

(Emphasis added) Docket 56, p.2. Plaintiffs' position is now clear – denied. Thus the court need not further analyze the sufficiency of this response.

In light of the foregoing, the defendants' motion to compel granted in part and denied in part.

## Motion for Protective Order

As directed in the court's May 20, 2009 Order, the plaintiffs filed a motion for protective order prohibiting discovery relating to the plaintiffs' immigration status, plaintiffs' employment status during the last seven years, plaintiffs' residences as H-2A workers during the last seven years, plaintiffs' participation in other lawsuits and proceedings and plaintiffs' retention of counsel in this case. The court has reviewed the motion, memoranda, response and reply and

7

grants the motion for protective order as to interrogatory numbers 8, 10 and 23. These interrogatories seek information that is either irrelevant or not calculated to lead to discoverable information. Fed. R. Civ. P. 26(b)..

The plaintiffs seek an order precluding inquiry into:

1. Plaintiffs' Immigration Status at any time other than during the contract period of employment with defendants, including whether plaintiffs' H-2A visas were fraudulently obtained;

2. Plaintiffs' other employment – Interrogatory No. 11 (all other employment in past 7 years), No. 18 (information about all other employers within past 7 years), and No. 20 (efforts to secure employment as an H-2A worker in past 7 years); and

3. Plaintiffs' activities outside of H-2A employment that resulted in any benefit to plaintiffs including any "side jobs," purchase of goods or products for resale resulting in financial gain or incidental benefits such as medical or dental care – Interrogatory No. 6.

Plaintiffs argue that inquiry into these matters would have an *in terrorem* effect and would therefore have a chilling effect on their claims and their right to pursue them.

*In terrorem* means "in order to frighten" or "in to a state of terror." BLACK'S LAW DICTIONARY, 7th Ed. p. 825. Plaintiffs contend that, unlike employees who have committed application fraud or engaged in wrongdoing while employed, workers like themselves, who obtain employment under H-2A or other such visas, face much more serious ramifications from background discovery. Undocumented aliens, or documented aliens working under visas, are faced with fears of possible deportation, threats of physical harm or criminal prosecution if it is

determined that they were not properly in the U.S. and legally employed. Therefore, instead of subjecting themselves to these possibilities, litigants in some cases will drop their claims. This *in terrorem* effect essentially brings an end to plaintiffs claims through intimidation rather than resolution on their merits through the court system. To prevent a plaintiff who has brought work-related claims from later dropping his claims out of fear, plaintiffs argue, the court must weigh the effect an inquiry into immigration status has on a plaintiff's ability and willingness to maintain his claims in light of the public interest in allowing a plaintiff to enforce his workplace rights. *David v. Signal, International, LLC*, 2009 WL 874520, __ F.R.D. ___ (E.D. La. 2009); *see also* Rivera v. Nibco, Inc., 99-CV-6643, 2001 U.S. Dist. LEXIS 8335, at *14 (E.D. Cal. June 18, 2001).

Courts have generally recognized the *in terrorem* effect of inquiring into a party's immigration status when that status is irrelevant to any material claim. "In particular, courts have noted that allowing parties to inquire about the immigration status of other parties, *when not relevant,* would present a danger of intimidation that would inhibit plaintiffs' pursuit of their rights. *Baca v. Brother's Fried Chicken* 2009 WL 1349783, *1 (E.D.La.,2009), citing *Topo v. Dhir,* 210 F.R.D. 76, 78 (S.D.N.Y.2002).

In this case, the plaintiffs assert both Fair Labor Standards Act ("FLSA") claims and H-2A employment contract claims. The H-2A program, administered by the United States Department of Labor, grants foreign workers temporary work visas for employment in the United States, but only if the employer first demonstrates that he has made a good faith, active attempt to recruit American workers but could not find sufficient able, willing, and qualified workers for his needs. 8 U.S.C. § 1188(a)(1)(A); *Malacara v. Garber* 353 F.3d 393, 396 -397 (5th Cir. 2003).

9

The FLSA protects both citizens and aliens alike from unfair labor practices. *In re Reyes,* 814 F.2d 168, 170 (5th Cir.1987) ( "[T]he protections of the Fair Labor Standards Act are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant.").

The defendants recognize that immigration status has been found not relevant to claims under the FLSA, but they argue that information relating to employment history and immigration status directly affects the plaintiffs' breach of contract claims and their 3/4 guarantee claims[3]. The court has carefully reviewed the applicable case law and concludes that under *Hoffman Plastic Compounds, Inc. V. NLRB*, 535 U.S. 137, 122 S. Ct. 1275, 152 L.Ed. 2d 271 (2002), the plaintiffs' immigration status may be relevant to their claims for wages for any hours that they may not have actually worked. Under the *Hoffman Plastic* decision, the United States Supreme Court held that federal immigration policy, as expressed by Congress in the Immigration Reform and Control Act of 1986, foreclosed the National Labor Relations Board from awarding back pay[4] to an undocumented alien who had never been legally authorized to work in the United

---

[3] (6) Three-fourths guarantee – (i) Offer to worker. The employer shall guarantee to offer the worker employment for at least three-fourths of the workdays of the total periods during which the work contract and all extensions thereof are in effect, beginning with the first workday after the arrival of the worker at the place of employment and ending on the expiration date specified in the work contract or in its extensions, if any. If the employer affords the U.S. or H-2A worker during the total work contract period less employment than that required under this paragraph (b)(6), the employer shall pay such worker the amount which the worker would have earned had the worker, in fact, worked for the guaranteed number of days. . . .
20 C.F.R. § 655.102(b)(6)

[4] "Back pay" is an equitable remedy and commonly refers to the wages and other benefits that an employee would have been earned but for an unlawful firing; such awards are diminished by earnings in the interim. *See Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 197, 61 S.Ct. 845, 85 L.Ed. 1271 (1941)

States, even though alien had been unlawfully terminated in violation of the National Labor Relations Act. *Hoffman Plastic*, 535 U.S. 137, 151, 122 S. Ct. 1275, 1284 (2002).

The plaintiffs argue that *Hoffman* is not on point in here because the instant plaintiffs, unlike the plaintiff in *Hoffman*, were "H-2A workers" and were authorized for employment in the United States through the H-2A visa program. In contrast to the status of the employee in *Hoffman Plastic* case who was in the U.S. illegally but who obtained work through use of a fraudulent birth certificate, the H-2A program provides a process whereby employers provide a list of approved workers to the consulate for the purpose of obtaining specific work done via an employment contract. According to plaintiffs, their H-2A visas are valid, once obtained, and therefore regardless of whether the visas might have been obtained with the use of any illegal or fraudulent document or means, the plaintiffs were in the U.S. under valid work visas for the period of employment in issue.

This argument misses the mark. Like the worker in the *Hoffman Plastic* case, even if a plaintiff's immigration status would not foreclose the right to bring claims under the FLSA, Congress has expressly made it criminally punishable for an alien to obtain employment with false documents. *Hoffman Plastic Compounds, Inc.* v. N.L.R.B. 535 U.S. 137, 149-150, 122 S.Ct. 1275, 1283 - 1284 (2002); *Cf. David et al v. Signal, International, LLC*, 2009 WL 874520 at *5, __ F.R.D. ___ (E.D. La. 2009) ("Standing of an illegal alien to bring non-wage and hour claims cannot be decided in the abstract in the wake of *Hoffman Plastic, supra,* since it mandates that courts be wary, as a matter of public policy, of actions that undermine the IRCA."). The criminality of employment of undocumented workers established, there is no reason to think that Congress would nonetheless intend to permit back pay [as in *Hoffman*] where but for an

11

employer's unfair labor practices (*e.g.*, laying off a known labor union supporter in violation of § 8(a)(3) of the NLRA), an alien-employee would have remained in the United States illegally and continued to work illegally, all the while successfully evading apprehension by immigration authorities. *Hoffman Plastic* 535 U.S. 137, 140-141, 122 S.Ct. 1275, 1278 - 1279. Similarly, there is no reason to think that, despite the 3/4's guarantee, Congress would have intended payment to an H-2A worker who obtained a visa by fraud for hours not worked because the employee left the employer with whom he has contracted before the contract period ended [as alleged by defendants in this case].

Despite the availability of the FLSA to both legal and illegal aliens to redress claims for unpaid minimum and overtime wages for hours actually worked, it is likely that *Hoffman* would nevertheless bar payment for hours not actually worked under the 3/4's guarantee contract claims of an illegal alien. Accordingly, for purposes of discovery only and without ruling on admissibility of such evidence at trial, the court concludes that a plaintiff's immigration status during the period of the employment contract, as well as the means of obtaining the H-2A visas for that employment, is relevant to plaintiff's claims for "back pay" because an illegal alien may not be able to recover compensation for hours he or she did not actually work. *Id.,* 122 S.Ct at 1283. Discovery relating to plaintiffs' immigration status during the time period involving the contract of employment with the defendants is relevant and will be allowed, but is limited in scope and particularly in time by the terms of this order.

Moreover, plaintiffs also seek reimbursement of their expenses for travel to and from Mexico; if a plaintiff worked for another employer or obtained other gains (*e.g.,* bought goods in the U.S. and returned to Mexico to sell them for profit) or other benefit from their employment

with defendants while on the H-2A visas, then at least a portion of the damages claimed by plaintiffs on their breach of contract claims are not recoverable from defendants. *Luna v. Del Monte Fresh Produce,* 2007 WL 1500269 (N.D. GA 2007). In *Luna* the United States District Court for the Northern District of Georgia held

> As part of their claim, for example, plaintiffs seek to recover expenses they incurred 'for the benefit of defendants'. . . . These expenses include the costs of visa processing and travel to the United States. If Lorenzo [plaintiffs' class representative] worked for another employer while in the United States on the H-2A visa that he acquired in order to work for defendants, then at least some of the expenses he incurred in obtaining the visa and traveling to the United States did not inure to defendants' benefit and may not be recoverable in this lawsuit.

*Id.,* at *5. The defendants acknowledge such information may ultimately be found inadmissible as proof at trial, but given that plaintiffs have brought claims under both the FLSA and for breach of contract, the court concludes that the defendants' argument has merit. *Recinos - Recinos v. Express Forestry, Inc.,* 2006 WL 197030 at *13 (E. D. La 2006).

Although plaintiffs have offered to stipulate the validity of the H-2A visas for each plaintiff, such a stipulation, without a certification under Rule 11(b) by plaintiffs' counsel that the visas were not obtained by use of any fraudulent documents or unlawful conduct by the plaintiffs, would not be sufficient for the court to prohibit defendants from inquiry during deposition into this limited subject matter for the employment contract at issue here. Therefore, absent counsel for plaintiffs providing adequate certification that upon reasonable inquiry the plaintiffs did not engage in any unlawful or fraudulent conduct or use illegal or fraudulent documents in obtaining their H-2A visas for employment during the period relating to employment with the defendants, the plaintiffs must respond to discovery requests propounded by defendants, including interrogatories and deposition questions, as limited in time and scope by

13

this order.

The issues related to the plaintiffs' motion and to this case have not been the subject of extensive review by the Fifth Circuit. There remains a question as to the treatment of "other benefits" and whether pre-employment visa, recruitment and travel fees are recoverable or factor into computation for minimum wage standards under the FLSA; the Fifth Circuit has held that these fees were not primarily for the benefit of the employer, but the mandate has not issued, and there remains pending a motion for rehearing in the case. *Castellanos-Contreras v. Decatur Hotels LLC*, 559 F.3d 332, No. 07-30942 (5th Cir. February 11, 2009), *petition for rehearing filed* March 11, 2009; *but see Arriaga v. Florida Pac Farms, LLC*, 305 F.3d 1228 (11th Cir. 2002). Notwithstanding, the undersigned concludes that for discovery purposes, inquiry as propounded to plaintiffs in Interrogatory No. 6 will be allowed, but it will be limited in scope to the time period surrounding the contract for employment between the parties.

As to plaintiffs' past and prospective employment sought by interrogatory nos. 11, 18 and 20, plaintiffs' motion for protective order is granted except as it relates to the contract period of employment with defendants.[5] In theory, this may mean that there is no information responsive

---

[5]INTERROGATORY 3 NO. 11: State with specificity every job you have held within the past seven (7) years, whether in Mexico or within the United States, identify the identities, addresses, and telephone numbers of each such employer, state the wages earned with respect to such employment, the manner in which the wages were computed (i.e. on an hourly or piece basis), the dates of such employment, and the reasons for your leaving or terminating your employment with respect to each job held. To the extent that you object to providing information regarding your current employment, you should provide the remaining information regarding your past employment history without reservation.

INTERROGATORY NO. 18: Please identify each and every employer(s) by which or whom you have been employed for seven (7) years preceding the date of your answer to this interrogatory, giving the dates of each employment, the type of work performed by you, the amount of your salary, job duties, reasons for leaving, the identity, address, and telephone

14

to these requests because they refer to employment other than with the defendants, and plaintiffs may not have secured other employment during the contract period at issue here. However, if a plaintiff did secure other employment during the relevant contract period, the requested information is discoverable and must be provided.

The plaintiffs' motion for a protective order is granted except as it relates to the time period involving the contract at issue in this case. In other words, for this time period only, the plaintiffs must provide responses to defendants' interrogatories and other discovery about plaintiffs' immigration status, documents and information relating to the plaintiffs' obtaining work documents and H-2A visas, as well as any benefits, including other employment or side jobs, sale of goods or products, or other such benefits as defined in interrogatory no. 6.

---

number of such employer, and the identity of your immediate supervisor with respect to each such job or period of employment.

INTERROGATORY NO. 20 : Describe all efforts made by you to secure employment as an H-2A worker for the past seven (7) years, including the following:
a. List each prospective H-2A employer with whom Plaintiff has applied, the date(s) on which Plaintiff applied with each such employer, and the position(s) applied for, and for each such prospective or actual employer, identify their name(s), addresses, and telephone numbers;
b. Identify any employment agencies or services, job placement services, or visa application services used, utilized, or contacted by Plaintiff;
c. State the specific person(s) with whom you discussed any such prospective employment, the terms of the offer of employment as you understood them, the address and telephone number of each such person with whom you spoke;
d. State with specificity whether you obtained such employment, and regardless of whether such employment was obtained, identify the specific terms and conditions of such offered or actual employment, including whether visa application expenses were paid (or would be paid) by the employer, the amount of such payment, and when such payment was made, whether transportation expenses were paid (or would be paid) by the employer, the amount of such payment, and when such payment was made, whether you left said employment prior to the termination or end date provided within the applicable contract, and whether such leaving was voluntary or requested/required by the employer.

The plaintiffs' motion for protective order is granted in part and denied in part in accordance with the limitations prescribed in this order.

SO ORDERED, this, the 24th day of June, 2009.

    /s/   S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE